## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ABSORPTION PHARMACEUTICALS, LLC,

      Plaintiff,

      v.

RECKITT BENCKISER, LLC,
and DOES 1-50,

      Defendants.

—————————————————

RECKITT BENCKISER, LLC and RB
HEALTH (US) LLC,

      Counterclaim-Plaintiffs,

      v.

ABSORPTION PHARMACEUTICALS, LLC,

      Counterclaim Defendant.

Civil Action No. 2:17-cv-12872 (MCA) (JAD)

**ANSWER, DEFENSES AND
COUNTERCLAIMS**

Defendant Reckitt Benckiser, LLC ("Defendant" or "RB"), by and through its attorneys McElroy, Deutsch, Mulvaney & Carpenter, LLP and Sheppard, Mullin, Richter & Hampton LLP, hereby answers the Complaint by Plaintiff Absorption Pharmaceuticals, LLC ("Plaintiff" or "Absorption") and alleges additional or affirmative defenses as follows:

### ANSWER

1.      Defendant denies the allegations set forth in Paragraph 1 of the Complaint.

2.      Defendant denies the allegations set forth in Paragraph 2 of the Complaint.

3.      Defendant denies the allegations set forth in Paragraph 3 of the Complaint.

4.      Defendant avers that the allegations of Paragraph 4 of the Complaint regarding the nature of its Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 4 of the Complaint contains factual allegations, Defendant denies those allegations.

5.      Defendant avers that the allegations of Paragraph 5 of the Complaint regarding subject matter jurisdiction constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 5 of the Complaint contains factual allegations, Defendant denies those allegations.

6.      Defendant avers that the allegations of Paragraph 6 of the Complaint regarding personal jurisdiction constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 6 of the Complaint contains factual allegations, Defendant denies those allegations.  Defendant specifically denies that the District of Nevada maintained personal jurisdiction over Defendants.

7.      Defendant avers that the allegations of Paragraph 7 of the Complaint regarding venue constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 7 of the Complaint contains factual allegations, Defendant denies those allegations.  Defendant specifically denies that venue in the District of Nevada was proper as set forth in the December 1, 2017 Order of Judge James C. Mahan (Dkt. No. 33).

8.      Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 8 of the Complaint and, therefore, denies same.

9.      Defendant avers that the allegations of Paragraph 9 of the Complaint regarding diversity of citizenship constitute legal contentions and/or conclusions to which no response is

required.  Defendant admits that it is a Delaware limited liability company with its principal place of business in Parsippany, New Jersey and that Defendant manufactures and distributes household products.  Except as so admitted and averred, Defendant denies the remaining allegations in Paragraph 9 of the Complaint.

10.     Defendant avers that the allegations of Paragraph 10 of the Complaint regarding the DOE defendants constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 10 of the Complaint contains factual allegations, Defendant denies those allegations.

11.     Defendant denies the allegations set forth in Paragraph 11 of the Complaint.

12.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 12 of the Complaint and, therefore, denies same.

13.     Defendant denies the allegations set forth in Paragraph 13 of the Complaint.

14.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 14 of the Complaint and, therefore, denies same.

15.     Defendant denies the allegations set forth in Paragraph 15 of the Complaint that Auxilium made an offer to Plaintiff.  Except as so denied, Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 15 of the Complaint and, therefore, denies same.

16.     Defendant denies the allegations set forth in Paragraph 15 of the Complaint that Auxilium made an offer to Plaintiff and that Auxilium held open that "offer" indefinitely. Except as so denied, Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 15 of the Complaint and, therefore, denies same.

17.     Defendant admits that the email exchange reprinted below Paragraph 17 of the Complaint was exchanged between representatives of Plaintiff and Defendant, respectively, and Defendant refers to that email for its contents.  Except as so admitted, Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 17 of the Complaint and, therefore, denies same.

18.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 18 of the Complaint and, therefore, denies same.

19.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 19 of the Complaint and, therefore, denies same.

20.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 20 of the Complaint and, therefore, denies same.

21.     Defendant denies the allegations set forth in Paragraph 21 of the Complaint that Plaintiff's marketing strategy "is groundbreaking."  Except as so denied, Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 21 of the Complaint and, therefore, denies same.

22.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 22 of the Complaint and, therefore, denies same.

23.     Defendant denies the allegations set forth in Paragraph 23 of the Complaint that Auxilium had made an offer to Plaintiff and that Auxilium had kept that "offer" on the table. Except as so denied, Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 15 of the Complaint and, therefore, denies same.

24.     Defendant admits the allegations in Paragraph 24 of the Complaint.

25.     Defendants admits the allegations in Paragraph 25 of the Complaint.

26.     Defendant admits that the claims and investigations described in Paragraph 26 have been made and conducted by government authorities in Australia, South Korea and the United States.  Defendant avers that RB and its affiliates deny these allegations and any wrongdoing.  Except as so admitted and averred, Defendant denies the allegations of Paragraph 26 of the Complaint.

27.     Defendant admits that RB was sued by Poo~Pourri Products in March 2016.  Defendant avers that RB and its affiliates deny Poo~Pourri Products' allegations and any wrongdoing.  Except as so admitted and averred, Defendant denies the allegations of Paragraph 27 of the Complaint.

28.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 28 of the Complaint and, therefore, denies same.

29.     Defendant admits that RB acquired the K-Y brand from Johnson & Johnson in March 2014, that RB retained Stephen De Pretre ("De Pretre") as a consultant, and that De Pretre suggested that RB consider a transaction with Absorption.  Except as so admitted, Defendant denies the allegations of Paragraph 29 of the Complaint.

30.     Defendant denies the allegations set forth in Paragraph 30 of the Complaint.

31.     Defendant admits that De Pretre presented Absorption to RB as a potential acquisition target and that Corrie Mueller ("Mueller") ordered samples of the Promescent product in connection with her due diligence.  Except as so admitted, Defendant denies the allegations of Paragraph 31 of the Complaint.

32.     Defendant admits that a telephone conference between employees of Reckitt Benckiser Household Products (China) Co. Ltd. ("RB China") and Absorption took place in or around May 2014.  Defendant further admits that RB China and Absorption executed a Mutual

Confidentiality Agreement in or around May 2014.  Except as so admitted, Defendant denies the allegations of Paragraph 32 of the Complaint.

33.     Defendant denies the allegations set forth in Paragraph 33 of the Complaint.

34.     Defendant admits the allegations set forth in Paragraph 34 of the Complaint.

35.     Defendant admits that Volker Sydow ("Sydow") met with Jeff Abraham ("Abraham") on June 4, 2014, that Abraham presented information to Sydow regarding Absorption and its Promescent product, and that Sydow suggested that Abraham meet with Muller in Las Vegas.  Except as so admitted, Defendant denies the allegations of Paragraph 35 of the Complaint.

36.     Defendant denies the allegations set forth in Paragraph 36 of the Complaint.

37.     Defendant admits that the email exchange quoted in  Paragraph 37 of the Complaint was sent by Sydow.  Except as so admitted, Defendant denies the allegations of Paragraph 37 of the Complaint.

38.     Defendant denies the allegations set forth in Paragraph 38 of the Complaint.

39.     Defendant admits that it conducted due diligence with respect to a potential transaction with Absorption and that it used the name Project Speedy to identify that work. Except as so admitted, Defendant denies the allegations of Paragraph 39 of the Complaint.

40.     Defendant admits that Sydow emailed Abraham on or about June 17, 2014 and stated, "Good news: Got the 'go ahead' yesterday from my CEO to look into detail at your fabulous 'Promescent' product."  Except as so admitted, Defendant denies the allegations set forth in Paragraph 40 of the Complaint.

41.     Defendant admits that on or about June 25, 2014 Abraham and representatives from RB had a call to discuss due diligence with respect to a potential transaction with

Absorption and that RB provided Absorption with a due diligence tracker to organize the information that was to be exchanged during due diligence.  Except as so admitted, Defendant denies the allegations of Paragraph 41 of the Complaint.

42.     Defendant admits that Sydow emailed Abraham on or about June 25, 2014 and stated "Getting a royalty from a much larger pie is the big price to win with RB.. and to understand how big the pie can actually now become is the core exercise we need to run." Except as so admitted, Defendant denies the allegations of Paragraph 42 of the Complaint.

43.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 43 of the Complaint and, therefore, denies same.

44.     Defendant admits that the email exchange reprinted below Paragraph 44 of the Complaint was sent from Sydow to Abraham and Defendant refers to that email for its contents. Except as so admitted, denies the allegations of paragraph 44 of the Complaint.

45.     Defendant admits that Abraham sent an email to Sydow on or about June 30, 2014 and Defendant refers to that email for its contents.  Defendant avers that Abraham's statements in that email were false.  Except as so admitted and averred, Defendant denies the remaining allegations in Paragraph 45 of the Complaint.

46.     Defendant admits that on July 9, 2014 Brian Robertson and Kavan Stewart sent a letter to Absorption and Defendant refers to that letter for its contents.  Except as so admitted, Defendant denies the remaining allegations in Paragraph 46 of the Complaint.

47.     Defendant admits that a key issue for RB in assessing a potential transaction with Absorption was determining the size of the potential market for a premature ejaculation spray. Defendant avers that another key issue for RB in assessing a potential transaction with Absorption was addressing any regulatory issues concerning Promescent before proceeding with

any transaction with Absorption.  Except as so admitted and averred, Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 47 of the Complaint and, therefore, denies same.

48.     Defendant denies the allegations set forth in Paragraph 48 of the Complaint.

49.     Defendant denies the allegations set forth in Paragraph 49 of the Complaint.

50.     Defendant denies the allegations set forth in Paragraph 50 of the Complaint.

51.     Defendant denies the allegations set forth in Paragraph 51 of the Complaint.

52.     Defendant admits that it requested samples of the Promescent product for condom testing.  Except as so admitted, Defendant denies the remaining allegations in Paragraph 52 of the Complaint.

53.     Defendant denies the allegations set forth in Paragraph 53 of the Complaint.

54.     Defendant admits that Abraham met with Alexander Lacik in Parsippany New Jersey on or about August 18, 2014.  Except as so admitted, Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 54 of the Complaint and, therefore, denies same.

55.     Defendant denies the allegations set forth in Paragraph 55 of the Complaint.

56.     Defendant admits that it advised Absorption that RB needed to validate the size of the potential market for a premature ejaculation spray and regulatory issues concerning Promescent before proceeding with any transaction with Absorption.  Except as so admitted, Defendant denies the remaining allegations in Paragraph 56 of the Complaint.

57.     Defendant denies the allegations set forth in Paragraph 57 of the Complaint.

58.     Defendant admits that Abraham and Sydow exchanged emails on or about October 23, 2014 and Defendant refers to that email for its contents.  Defendant avers that

Abraham's statements in those emails were false.  Except as so admitted and averred, Defendant denies the remaining allegations in Paragraph 58 of the Complaint.

59.     Defendant admits that it conducted research regarding the size of the potential market for a premature ejaculation spray.  Defendant further admits that Sydow told Abraham that RB intended to present the results of its research and due diligence to Reckitt Benckiser plc's CEO, Rakesh Kapoor, and others in late January 2015.  Except as so admitted, Defendant denies the remaining allegations in Paragraph 59 of the Complaint.

60.     Defendant admits that the email from Abraham reprinted below Paragraph 60 of the Complaint was sent by Abraham to Sydow, and that Abraham advised RB that Absorption was in talks with other companies.  Defendant avers that Abraham's statements were false.  Except as so admitted and averred, Defendant denies the remaining allegations in Paragraph 60 of the Complaint.

61.     Defendant admits that Sydow advised Abraham that RB was not deliberately delaying progress with respect to its discussions with Absorption.  Except as so admitted, Defendant denies the remaining allegations in Paragraph 61 of the Complaint.

62.     Defendant denies the allegations set forth in Paragraph 62 of the Complaint.

63.     Defendant admits that it did not share its research regarding the size of the potential market for a premature ejaculation spray with Absorption.  Except as so admitted, Defendant denies the remaining allegations in Paragraph 63 of the Complaint.

64.     Defendant denies the allegations set forth in Paragraph 64 of the Complaint.

65.     Defendant admits the allegations set forth in Paragraph 65 of the Complaint.

66.     Defendant admits that Absorption and RB reengaged in discussions regarding a potential transaction in late 2015.  Defendant avers that it was De Pretre, on behalf of Absorption

who initiated those discussions. Except as so admitted and averred, Defendant denies the remaining allegations in Paragraph 66 of the Complaint.

67.     Defendant admits that in connection with those discussions, Sydow emailed De Pretre on or about January 19, 2016 and stated, "I just want to make sure we will set this up in a way that neither side will be impacted negatively if we decide after these discussions that it will not be the right decision for us to collaborate." Defendant further refers to Sydow's email for its contents. Except as so admitted, Defendant denies the allegations set forth in Paragraph 67 of the Complaint.

68.     Defendant admits that it rejected the NDA proposed by Absorption and that RB proposed a different agreement, which Absorption rejected. Defendant refers to those draft agreements for their contents. Except as so admitted, Defendant denies the remaining allegations in Paragraph 68 of the Complaint.

69.     Defendant admits that in or around May 2016, Zak Austin, then a Research & Development Associate at RB, ordered approximately 40 bottles of Promescent for use in connection with a consumer study involving various premature ejaculation spray and gel products, including Promescent. Except as so admitted, Defendant denies the remaining allegations in Paragraph 69 of the Complaint.

70.     Defendant admits that it filed a Trade/Service Mark Application with the United States Patent and Trademark Office on or about May 3, 2016 regarding the mark "K-Y." That application was assigned Serial Number 87023826, and Defendant refers to that application for its contents. Defendant admits that it filed a Trade/Service Mark Application with the United States Patent and Trademark Office on or about August 12, 2016 regarding the mark "LAST LONGER STAY IN THE MOMENT." That application was assigned Serial Number 87136667,

and Defendant refers to that application for its contents.  Except as so admitted, Defendant

denies the allegations set forth in Paragraph 70 of the Complaint.

71.     Defendant admits that it began manufacturing K-Y Duration in or around June

2016.  Except as so admitted, Defendant denies the allegations set forth in Paragraph 71 of the

Complaint.

72.     Defendant admits that Sydow's assistant, Gail Crumpton, exchanged emails with

Abraham on or around July 12, 2016.  Defendant refers to those emails for their contents.

Except as so admitted, Defendant denies the remaining allegations in Paragraph 72 of the

Complaint.

73.     Defendant admits that it began offering K-Y Duration for sale in September 2016.

Except as so admitted, Defendant denies the remaining allegations in Paragraph 73 of the

Complaint.

74.     Defendant denies the allegations set forth in Paragraph 74 of the Complaint.

75.     Defendant denies the allegations set forth in Paragraph 75 of the Complaint.

76.     Defendant denies the allegations set forth in Paragraph 76 of the Complaint.

77.     Defendant denies the allegations set forth in Paragraph 77 of the Complaint.

78.     Defendant lacks knowledge or information sufficient to form a belief as to the

allegations of Paragraph 78 of the Complaint and, therefore, denies same.

79.     Defendant lacks knowledge or information sufficient to form a belief as to the

allegations of Paragraph 79 of the Complaint and, therefore, denies same.

80.     Defendant lacks knowledge or information sufficient to form a belief as to the

allegations of Paragraph 80 of the Complaint and, therefore, denies same.

81.     Defendant admits that the K-Y Duration product is currently stocked in Target stores.  Defendant avers that Absorption's Promescent product is also currently stocked in Target stores.  Except as so admitted and averred, Defendant denies the allegations of Paragraph 81 of the Complaint.

82.     Defendant denies any interference with the distribution of Absorption's Promescent product on Amazon.com.  Except as so denied, Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 82 of the Complaint and, therefore, denies same.

83.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 83 of the Complaint and, therefore, denies same.

84.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 84 of the Complaint and, therefore, denies same.

85.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 85 of the Complaint and, therefore, denies same.

86.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 86 of the Complaint and, therefore, denies same

87.     Defendant denies the allegations set forth in Paragraph 87 of the Complaint.

88.     Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 88 of the Complaint and, therefore, denies same.

89.     Defendant avers that the allegations of Paragraph 89 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 89 of the Complaint contains factual allegations, Defendant denies those allegations.

## COUNT I

90.     With respect to the allegations in Paragraph 90 of the Complaint, Defendant repeats and incorporates by reference its responses to each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

91.     Defendant denies the allegations set forth in paragraph 91 of the Complaint.

92.     Defendant denies the allegations set forth in paragraph 92 of the Complaint.

93.     Defendant denies the allegations set forth in paragraph 93 of the Complaint.

94.     Defendant avers that the allegations of Paragraph 94 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 94 of the Complaint contains factual allegations, Defendant denies those allegations.

95.     Defendant avers that the allegations of Paragraph 95 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 95 of the Complaint contains factual allegations, Defendant denies those allegations.

96.     Defendant avers that the allegations of Paragraph 96 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 96 of the Complaint contains factual allegations, Defendant denies those allegations.

## COUNT II

97.     With respect to the allegations in Paragraph 97 of the Complaint, Defendant repeats and incorporates by reference its responses to each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

98.     Defendant avers that the allegations of Paragraph 98 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 98 of the Complaint contains factual allegations, Defendant denies those allegations.

99.     Defendant avers that the allegations of Paragraph 99 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 99 of the Complaint contains factual allegations, Defendant denies those allegations.

100.     Defendant denies the allegations set forth in paragraph 100 of the Complaint.

101.     Defendant denies the allegations set forth in paragraph 101 of the Complaint.

102.     Defendant denies the allegations set forth in paragraph 102 of the Complaint.

103.     Defendant avers that the allegations of Paragraph 103 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 103 of the Complaint contains factual allegations, Defendant denies those allegations.

104.     Defendant avers that the allegations of Paragraph 104 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 104 of the Complaint contains factual allegations, Defendant denies those allegations.

105.     Defendant avers that the allegations of Paragraph 105 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 105 of the Complaint contains factual allegations, Defendant denies those allegations.

106.     Defendant avers that the allegations of Paragraph 106 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 106 of the Complaint contains factual allegations, Defendant denies those allegations.

107.     Defendant avers that the allegations of Paragraph 107 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 107 of the Complaint contains factual allegations, Defendant denies those allegations.

**COUNT III**

108.    With respect to the allegations in Paragraph 108 of the Complaint, Defendant repeats and incorporates by reference its responses to each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

109.    Defendant avers that the allegations of Paragraph 109 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 109 of the Complaint contains factual allegations, Defendant denies those allegations.

110.    Defendant avers that the allegations of Paragraph 110 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 110 of the Complaint contains factual allegations, Defendant denies those allegations.

111.    Defendant denies the allegations set forth in paragraph 111 of the Complaint.

112.    Defendant denies the allegations set forth in paragraph 112 of the Complaint.

113.    Defendant avers that the allegations of Paragraph 113 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 113 of the Complaint contains factual allegations, Defendant denies those allegations.

114.    Defendant avers that the allegations of Paragraph 114 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 114 of the Complaint contains factual allegations, Defendant denies those allegations.

115.    Defendant avers that the allegations of Paragraph 115 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 115 of the Complaint contains factual allegations, Defendant denies those allegations.

116.    Defendant avers that the allegations of Paragraph 116 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 116 of the Complaint contains factual allegations, Defendant denies those allegations.

## COUNT IV

117.    With respect to the allegations in Paragraph 117 of the Complaint, Defendant repeats and incorporates by reference its responses to each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

118.    Defendant denies the allegations set forth in paragraph 118 of the Complaint.

119.    Defendant denies the allegations set forth in paragraph 119 of the Complaint.

120.    Defendant denies the allegations set forth in paragraph 120 of the Complaint.

121.    Defendant denies the allegations set forth in paragraph 121 of the Complaint.

122.    Defendant denies the allegations set forth in paragraph 122 of the Complaint.

123.    Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 123 of the Complaint and, therefore, denies same.

124.    Defendant avers that the allegations of Paragraph 124 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 124 of the Complaint contains factual allegations, Defendant denies those allegations.

## COUNT V

125.    With respect to the allegations in Paragraph 125 of the Complaint, Defendant repeats and incorporates by reference its responses to each and every allegation in the foregoing paragraphs with the same force and effect as if fully set forth herein.

126.    Defendant denies the allegations set forth in paragraph 126 of the Complaint.

127.    Defendant lacks knowledge or information sufficient to form a belief as to the allegations of Paragraph 127 of the Complaint and, therefore, denies same.

128.    Defendant admits that Abraham claimed to have been engaged discussions with Amazon and Auxilium.  Defendant avers that Abraham's claims were false.  Except as so admitted and averred, Defendant denies the remaining allegations in Paragraph 128 of the Complaint.

129.    Defendant denies the allegations set forth in paragraph 129 of the Complaint.

130.    Defendant denies the allegations set forth in paragraph 130 of the Complaint.

131.    Defendant avers that the allegations of Paragraph 131 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 131 of the Complaint contains factual allegations, Defendant denies those allegations.

132.    Defendant avers that the allegations of Paragraph 132 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 132 of the Complaint contains factual allegations, Defendant denies those allegations.

133.    Defendant avers that the allegations of Paragraph 133 of the Complaint constitute legal contentions and/or conclusions to which no response is required.  To the extent Paragraph 133 of the Complaint contains factual allegations, Defendant denies those allegations.

The remainder of the allegations in the Complaint constitute a prayer for relief, to which no response is required.  To the extent a response is deemed required, the allegations are denied. All allegations not specifically admitted or denied in the foregoing numbered responses are hereby denied.

WHEREFORE, based on the foregoing responses, RB requests judgment dismissing the Complaint in its entirety and granting such other and further relief as the Court deems just and proper.

## AFFIRMATIVE DEFENSES

Without assuming any burden, it would not otherwise bear, Defendant asserts the following affirmative defenses to Plaintiff's Complaint.

### First Affirmative Defense

The Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Plaintiff's claims for relief are barred by the doctrine of estoppel.

### Third Affirmative Defense

Plaintiff's claims for relief are barred by the doctrine of waiver.

### Fourth Affirmative Defense

Plaintiff's claims for relief are barred by the doctrine of unclean hands.

### Fifth Affirmative Defense

Plaintiff's claims for relief are barred by the doctrine of laches.

### Sixth Affirmative Defense

Plaintiff cannot recover as it is unable to demonstrate that the information at issue is considered a trade secret, a legitimate business interest, or that all necessary steps were taken to ensure the secrecy of the supposed trade secrets.

### Seventh Affirmative Defense

Plaintiff is barred from claiming trade secret misappropriation as to any items of information that were generally known and/or readily ascertainable at the time of the alleged misappropriation.

### Eighth Affirmative Defense

Plaintiff is barred from asserting any claim against Defendant under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836, et seq., as any alleged misconduct took place prior to May 11, 2016, the date that the Defend Trade Secrets Act was enacted.

### Ninth Affirmative Defense

Plaintiff is unable to recover under a theory of tortious interference as Plaintiff cannot demonstrate a viable contract with a third party, that the Defendant was aware of such contract and interfered with that third-party contract.

### Tenth Affirmative Defense

Plaintiff is unable to recover under a theory of tortious interference as Plaintiff and Defendants are competitors and any alleged interference was privileged.

### Eleventh Affirmative Defense

The Complaint, and each allegation of fraud and misrepresentation therein, fails to allege the circumstances constituting fraud with particularity in accordance with Federal Rule of Civil Procedure 9(b), and all such allegations should accordingly be dismissed.

### Twelfth Affirmative Defense

The Complaint, and each allegation of fraud and misrepresentation therein, fails because each such allegation is based on statements relating to future promises, and not statements relating to a past or existing fact.

### Thirteenth Affirmative Defense

The Complaint, and each allegation of fraud and misrepresentation therein, fails because each such allegation fails to establish any intent to deceive by Defendant or its agents.

### Fourteenth Affirmative Defense

The Complaint, and each allegation of fraud and misrepresentation therein, fails because each such allegation fails to establish that Plaintiff reasonably relied upon any purportedly false representations by Defendant or its agents.

### Fifteenth Affirmative Defense

Plaintiff cannot demonstrate that it has sustained actual damages as required to recover on its claims.

### Sixteenth Affirmative Defense

To the extent that Plaintiff has suffered any damages, such damages should be set-off in an amount to be proven.

### Seventeenth Affirmative Defense

Plaintiff is not entitled to injunctive relief, because any injury to it is not immediate and irreparable, Plaintiff would have an adequate remedy at law, the balance of hardships favors no injunction, and the public interest is best served by no injunction.

### Eighteenth Affirmative Defense

Plaintiff's Complaint, and each cause of action asserted therein, is barred by Plaintiff's failure to take reasonable efforts to mitigate damages or injury, if any, that would have prevented (or at a minimum, substantially reduced) its alleged injury or damage.  Any recovery by Plaintiff must be reduced or barred for this reason.

## Nineteenth Affirmative Defense

Under the circumstances of this case, any award of punitive damages would violate the United States Constitution and federal and/or state law and policy.

## Twentieth Affirmative Defense

The Complaint fails to set forth facts sufficient to constitute a claim for punitive damages or exemplary damages in that neither Defendant nor its agents, if any, acted with malice, fraud, oppression, or any other manner sufficient to sustain punitive or exemplary damages with respect to the Plaintiff.

## Twenty-First Affirmative Defense

Defendant reserves the right to assert additional affirmative defenses.

## COUNTERCLAIMS

Counterclaim-Plaintiffs Reckitt Benckiser, LLC and RB Health (US) LLC (collectively, "RB"), by and through its attorneys McElroy, Deutsch, Mulvaney & Carpenter, LLP and Sheppard, Mullin, Richter & Hampton LLP, as and for its Counterclaims against Plaintiff/Counterclaim Defendant Absorption Pharmaceuticals, LLC ("Absorption"), alleges, upon its own acts and upon information and belief as to all other matters, as follows:

1.      Contrary to the allegations in Absorption's Complaint, RB engaged in good faith with Absorption, a company with no track record, around a possible transaction in 2014.  That due diligence process, which RB undertook at great time and expense, raised concerns regarding Absorption's business and the Promescent product.  RB raised legitimate concerns, and thereafter largely declined to be baited by Absorption's efforts to generate interest in a product with nominal sales in a limited category of the sexual wellbeing marketplace.

2.      Absorption's efforts to generate interest in its Promescent product featured repeated misrepresentations and outright lies by Absorption's CEO, Jeff Abraham ("Abraham"), in an effort to induce RB to continue discussions and due diligence with Absorption regarding a potential transaction.  RB relied upon those misrepresentation and engaged in a thorough due diligence process with respect to Absorption at great cost and expense to RB.  Absorption's misconduct in this regard gives rise to claims for fraud and negligent misrepresentation.

3.      Absorption has further made claims on its packaging and in advertising that are outside of the FDA monograph for male desensitizing spray products, including false superiority claims regarding the Promescent product, and false claims comparing Promescent to RB's K-Y Duration male genital desensitizer product.  Absorption's misconduct in this regard gives rise to claims for false advertising and unfair competition under the Lanham Act, New Jersey common law, and New Jersey statutory law.

## PARTIES

4.      Reckitt Benckiser, LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 399 Interspace Parkway, Parsippany, New Jersey.

5.      RB Health (US) LLC is a limited liability company organized and existing under the laws of Delaware with its principal place of business at 399 Interspace Parkway, Parsippany, New Jersey.

6.      Upon information and belief, Counterclaim-Defendant Absorption Pharmaceuticals, LLC is a limited liability company organized and existing under the laws of Delaware having a place of business in Huntington Beach, California.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over these counterclaims pursuant to 28 U.S.C.

§ 1367.  This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the

complaint involves a federal question under the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), and

jurisdiction over the accompanying state-law counterclaims pursuant to the doctrine of

supplemental jurisdiction.

8.     Venue is proper under 28 U.S.C. § 1391(b).

## FACTS

9.     RB is one of the world's leading consumer health and hygiene companies.  In

addition to household health and home brands such as MUCINEX cough medicine, SCHOLL

footcare products, and LYSOL disinfectants, RB is one of the largest sexual wellness companies

in the world.  In this area, RB owns leading brands such as DUREX for condoms, and K-Y for

lubricants.  Since 2010, RB has long been a leader in the sexual wellness category, sponsoring

research and developing products in the United States.

### Absorption's Deceptive Conduct

10.     RB was introduced to Absorption in or about May 2014 by Stephen De Pretre

("De Pretre") and Sapphire Group Asia Pacific Ltd. ("Sapphire").  At that time De Pretre and

Sapphire were working with RB as a third-party consultant.

11.     De Pretre, having apparently identified publicly-available information regarding

Absorption's sales, customers and marketing, presented RB with the opportunity to explore a

transaction with Absorption.

12.     Absorption sells a single product, Promescent, an over-the-counter lidocaine-

based male genital desensitizer spray (a "PE Spray").  PE Sprays are not new.  They have been

offered for sale and sold in the United States for decades and are the subject of a monograph

from the U.S. Food and Drug Administration (the "FDA").

13.     An FDA monograph is a publicly available regulation that describes the specific

ingredients, uses, doses, formulations, labeling, testing and claims that may be made with respect

to over-the-counter drugs such as PE sprays.  The FDA monograph for PE Spray is codified at 21

C.F.R. 348 (the "FDA Monograph").

14.     At the time De Pretre and Sapphire introduced RB to Absorption, there were

numerous PE Spray products on the market, including Stud 100, which was developed in 1970

and upon which the FDA Monograph for PE Spray is based.

15.     Abraham, Plaintiff's CEO, pitched Promescent as a unique product that used a

technology which, Plaintiff then claimed, allowed Promescent to be absorbed faster than other

PE Sprays.  Though now debunked, it was this claim to a unique technology that initially

attracted RB to the Promescent product.

16.     After RB expressed interest in the product, Abraham falsely represented that

Absorption was engaged in discussions with other "suitors" regarding a potential acquisition, and

that RB would need to move quickly if it wanted to have the opportunity to pursue a deal.  In

fact, Abraham repeatedly claimed in 2014 that Absorption was also engaged in negotiations with

respect to the Promescent product with companies like Auxilium Pharmaceuticals ("Auxilium"),

GlaxoSmithKline ("GSK"), and Church & Dwight.  Abraham also claimed that he was being

pressured by his investors to reach a deal with RB, and that RB needed to provide Absorption

with a term sheet immediately.  Like many of Abraham's statements regarding the purportedly

superior efficacy of his product, however, these claims were false.

17.     Throughout RB's discussions with Absorption, Abraham falsely claimed that Absorption was in discussions with multiple leading pharmaceutical and consumer products companies regarding a potential transaction involving the Promescent product.

18.     Abraham has since admitted that these repeated statements were untrue and were made in order to induce RB to continue discussions with Absorption regarding a potential transaction involving the Promescent product.

19.     For example, on or about June 10, 2014, Abraham claimed that "GSK is ready to make their formal proposal and asked me to sign some type of exclusivity thing where I would not talk to any other companies while they review our stuff."

20.     Abraham has since admitted that this statement, and his other statements regarding GSK's purported interest in Absorption, were untrue and were made to entice RB into proceeding with due diligence with Absorption in the hope that RB would consummate a transaction with Absorption.

21.     Additionally, on October 23, 2014, Mr. Abraham represented to an executive from RB that he was "sitting across from 2 [Church & Dwight] vp's now as [he was] composing this email."

22.     Abraham has admitted that his statement was untrue, along with his other statements regarding Church & Dwight's purported interest in Absorption, as Church & Dwight expressed no interest after Absorption had a brief phone call with them regarding the Promescent product.

23.     In fact, Abraham has admitted that his repeated statements to RB regarding claimed interest by Church & Dwight, GSK and others were lies.

24.     Additionally, in connection with Absorption's initial discussions with RB, Abraham falsely claimed that Absorption was in the process of conducting clinical trials with respect to the Promescent product and that those clinical trials would be completed before the end of 2014.

25.     Abraham made these false statements to Corrie Mueller and others on a conference call that took place on or about May 26, 2014.  Abraham made the same false statements to Volker Sydow during an in-person meeting in New York City on or about June 4, 2014.

26.     Thereafter, Abraham and Absorption repeated their false representations regarding Absorption's purported clinical trials with respect to the Promescent product.  These false statements were made for the purpose of enticing RB into proceeding with due diligence with Absorption in the hope that RB would consummate a transaction with Absorption.

27.     With no reason to suspect Abraham, or the opportunity he presented, was anything but genuine, and relying upon Abraham's false statements regarding competing interest from Church & Dwight and GSK, in the fall of 2014, RB proceeded with its due diligence regarding Absorption and Promescent, and even started preparing a non-binding term sheet to formalize RB's serious interest in the opportunity that Abraham had presented.

28.     The due diligence process was difficult for RB, as Absorption was not organized to pursue such a transaction.  In fact, in October 2014, Absorption retained an investment banker in an effort to bring more order to Absorption's responses to RB's due diligence requests and address the regulatory issues identified by RB.  Absorption proceeded to terminate that investment banker after the due diligence period with RB ended.

29.     In connection with the due diligence process, Absorption voluntarily and persistently provided RB with anecdotal customer purchase information, which Absorption has described as "cart" information.

30.     RB has learned that Absorption disclosed this information on multiple occasions to third-parties without any nondisclosure agreement or other confidentiality protection in place. This included Abraham's discussion of Absorption customer data on a publicly available podcast that was streamed online.

31.     Through that due diligence process, RB came to understand that the Promescent formula incorporated unauthorized excipients.  The most problematic of those excipients was thymol, which was the subject of Absorption's claimed formulation, and which Absorption claimed was the key ingredient differentiating Promescent from the multitude of competing PE Spray products on the market.

32.     Due to, among other things, Promescent's inclusion of thymol, Promescent does not comply with the FDA Monograph for a "male genital desensitizing drug product.".  The FDA Monograph describes the specific ingredients, uses, doses, formulations, labeling and claims that may be made with respect to over-the-counter drugs such as PE Sprays.  (*See* 21 C.F.R. 348.)

### The K-Y Duration Product

33.     Following RB's decision not to pursue a transaction with Absorption, and aware of the many PE Sprays on the market, RB decided to proceed with a PE product produced under the FDA Monograph.  RB first approached other makers of PE Sprays regarding a potential transaction, but those discussions were unsuccessful.

34.     RB thereupon decided to pursue internal development of its own FDA

Monograph-compliant PE Spray.  Unlike Absorption's product, the PE Spray product that RB set

out to develop would simply follow the FDA Monograph (thus eliminating the need to pursue

the safety and efficacy studies associated with a new drug under FDA requirements).

35.     In connection with its development process, RB, at great cost and expense,

engaged in its own thorough analysis of the PE Spray market, which included completing

internal and external scientific, market and consumer research studies.

36.     In May 2016, as the RB product was making its way to the market, Jeff Abraham

emailed Volker Sydow from RB and threatened:  "When you launch I launch as well . . . . I

already have serious media involved just waiting to see if you have the balls to attempt this."  He

further added, "I am going to devote every diem [sic] I have, every word I speak, and every

resource I possess for the remainder of my life to make sure I get this story out to as many people

as possible."

37.     Close to two years after engaging with Plaintiff, RB in September 2016 launched

its own PE Spray product, K-Y Duration.  RB's product is based on the FDA Monograph

formulation, and there is no allegation by Plaintiff that the formulation for the RB product in any

way infringes upon or misuses the formulation of Plaintiff's product.

38.     RB developed K-Y Duration at great cost and expense, using its own formulation,

which complied with the FDA Monograph for ingredients and claims, as well as its extensive

market research and marketing expertise.

39.     Following this email and RB's September 2016 launch of K-Y Duration,

Abraham attempted to make good on his threats by not only filing this suit, but also enlisting a

multitude of media sources to disparage RB and falsely allege that RB "stole" Absorption's

product.  Absorption and its employees and affiliates also engaged in a campaign to negatively

impact K-Y Duration's sales by posting fake reviews on Amazon and other websites.

40.     Leading up to and following RB's launch of K-Y Duration, Absorption has made

false and misleading claims regarding both the Promescent product and K-Y Duration in

advertising, on Absorption's website, and on the packaging for the Promescent product.

### The Absorption Consultant Publication

41.     Absorption throughout its advertising for Promescent claims that there is a

"Clinical Study" of the product.

42.     As discussed above, Absorption in 2014 falsely claimed that it was working on a

"large scale" clinical trial to evaluate the efficacy of Promescent.

43.     Absorption on December 11, 2013 issued a press release under the title

"Absorption Pharmaceuticals and Kaiser Permanente Initiate Clinical Trial of Promescent."

44.     Absorption claimed in the press release that it was initiating a "Phase III, double

blind, placebo-controlled, randomized study will measure the intravaginal ejaculatory latency

time (IELT) for subjects aged 18 and older.  The study protocol will adhere to International

Society of Sexual Medicine's (ISSM) definition of PE and guidelines set forth by the Standards

for Clinical Trials in Male Sexual Dysfunction Committee."

45.     Abraham, Absorption's CEO, has claimed that Absorption "cancelled" the

claimed clinical trial with Kaiser Permanente because Kaiser Permanente, the largest managed

care organization in the United States, with over 12 million health plan members as of December

31, 2018, because Kaiser Permanente was not able to identify enough subjects to participate in

the proposed research.

46.     Having failed to pursue any clinical trial or secure any such clinical data with Kaiser Permanente, Absorption looked to paid consultants to produce a sham publication upon which to base its advertising claims for the Promescent product.  For this purpose, Absorption turned to Kristen Mark and Ian Kerner, both of whom had a disclosed conflict of interest as they received both direct and indirect funding from Absorption.

47.     Abraham has further claimed that Dr. Mark, in conjunction with Dr. Kerner, completed a "clinical trial" for the efficacy of the Promescent product.  Absorption makes numerous advertising claims, found on its website, on podcasts, and in interviews regarding the claimed "clinical trial" conducted by Mark and Kerner.

48.     The FDA describes a Phase III clinical trial, the clinical trial that Absorption claims to have canceled with Kaiser Permanente and pursued with Mark and Kerner, as "[t]he experimental study drug or treatment is given to large groups of people.  Researchers confirm its effectiveness, monitor side effects, compare it to commonly used treatments, and collect information that will allow the experimental drug or treatment to be used safely."  *See* https://www.fda.gov/ForPatients/ClinicalTrials/Types/ucm20041762.htm.

49.     Mark and Kerner in 2016 published an original article entitled "Event-level impact of Promescent on quality of sexual experience in men with subjective premature ejaculation" (the "Absorption Consultant Publication").

50.     The authors of the Absorption Consultant Publication acknowledge "feedback provided on earlier versions of this article by Laurence Levine, MD."  Dr. Levine was the Chief Medical Officer of Absorption.

51.     The Absorption Consultant Publication is not a clinical trial.

52.     The Absorption Consultant Publication is not a double blind, placebo-controlled, randomized study.

53.     The Absorption Consultant Publication does not measure the intravaginal ejaculatory latency time (IELT) for subjects.

54.     The Absorption Consultant Publication does not have a study protocol which adheres to International Society of Sexual Medicine's (ISSM) definition of PE.

55.     The Absorption Consultant Publication does not have a study protocol which adheres to the "guidelines set forth by the Standards for Clinical Trials in Male Sexual Dysfunction Committee," as previously claimed by Absorption in describing the claimed clinical trial with Kaiser Permanente.

56.     "Subjective" premature ejaculation is also denominated as "premature-like ejaculatory dysfunction."  Its IELTs are in the normal range or even of longer duration.  *See* Waldinger, *Toward Evidence-Based Genetic Research on Lifelong Premature Ejaculation: A Critical Evaluation of Methodology*, Korean J Urol. 2011 Jan.  "Subjective" premature ejaculation is distinguished from three of the four premature ejaculation subtypes, and is not (a) lifelong PE, (b) acquired PE, or (c) natural variable PE.

57.     The Absorption Consultant Publication claims to study only the "subjective" premature ejaculation subtype.

58.     The Absorption Consultant Publication claims to have measured when sexual events resulted in both members of the couple having orgasm, yet the question was only asked of the product user, and not his partner.  Indeed, Mark and Kerner admit that 42.7% of study participants did not inform their partner on the use of the spray.

59.    Ultimately, Mark and Kerner admit that "these findings should not be generalized to a clinical objective premature ejaculation sample."

60.    Notwithstanding the foregoing, in the largest font on the landing page of its website, Absorption make the following establishment claim regarding the performance of Promescent:  "CLINICALLY PROVEN  Last up to 64% longer in bed" (the "Clinically Proven Claim").

61.    Absorption has admitted that it has no user studies for Promescent other than the Absorption Consultant Publication.

Absorption relies upon the Absorption Consultant Publication to make the Clinically Proven Claim.  The Absorption Consultant Publication does not support the Clinically Proven Claim and/or is not sufficiently reliable to permit one to conclude with reasonable certainty that the Absorption Consultant Publication establish the Clinically Proven Claim.

**Claims Outside of FDA Monograph**

62.    The FDA permits a "male genital desensitizer" (as defined under the FDA Monograph) to be labelled using the following phrases:

(i) "Helps in the prevention of premature ejaculation."

(ii) "For temporary male genital desensitization, helping to slow the onset of ejaculation."

(iii) "Helps in temporarily" (select one of the following: "retarding the onset of," "slowing the onset of," or "prolonging the time until") followed by "ejaculation."

(iv) "For reducing oversensitivity in the male in advance of intercourse."

63.    Absorption does not label or advertise its Promescent product with any of the approved phrases permitted under the FDA Monograph.

64.    Rather, Absorption most prominently labels its product as a "Climax Control Spray."  Absorption omits any reference on any of the packaging for the Promescent product to

the fact, acknowledged under the FDA Monograph, that the product only works to "temporarily" prolong the time until ejaculation.

65.     Indeed, Absorption labels and advertises its Promescent product under the completely unsubstantiated express claim "Make Love Longer."

66.     Absorption has admitted that it has no substantiation for this claim.  The only "study" of the Promescent product ever conducted by or on behalf of Absorption is the Absorption Consultant Publication.

67.     The Absorption Consultant Publication expressly notes that the authors "did not rely on differences between baseline ejaculatory latency time and ejaculatory latency time with the use of the product."  Thus, Absorption cannot claim that the Promescent product permits a user to delay ejaculation "longer" than any other product in the market.

**Absorption's False Product Superiority Claims**

68.     In connection with its advertising and promotion of the Promescent product, Absorption has consistently made false claims in the competitive marketplace regarding the Promescent product.  In addition to Absorption's claims being outside of the FDA Monograph, as discussed above, they also constitute false advertising.

69.     For instance, the packaging for the Promescent product states that it is "FAST ACTING Absorbs quickly and works in minutes[,]" but this statement is not permitted by the FDA Monograph and Absorption has not conducted any clinical trial or study to support this false advertising statement.

70.     Similarly, the packaging for the Promescent product states that "Only PROMESCENT® has TargetZone™ technology, designed to keep desensitization to a small

area, and not transfer to your partner."  Again, this is a false advertising statement as it is not

permitted by the FDA Monograph and is not supported by any clinical trial or study.

71.     Absorption makes similar false advertising statements on its website,

promescent.com, such as the Clinically Proven Claim, which is featured in the center of its

landing page.  As discussed above, Absorption has not conducted any clinical trial or study to

support this false advertising statement.

72.     Absorption also makes false advertising statements on other pages of its website.

For instance, on the webpage https://www.promescent.com/company, Absorption claims "our

revolutionary TargetZone™ technology is unrivaled and adheres to all regulations (from the

FDA) placed on health products[.]"  Absorption's attempts to differentiate the Promescent

product from other male genital desensitizing spray products is itself contrary to the FDA

Monograph.  Moreover, as Promescent fails to comply with the FDA Monograph, both due to its

failure to comply with the labeling requirements of the FDA Monograph and its inclusion of

excipients such as thymol, it does not adhere to all regulations from the FDA and this statement

constitutes false advertising.

73.     Similarly, on the webpage https://www.promescent.com/promescent-reviews,

Absorption claims that "Promescent, which is an FDA-compliant over-the-counter topical spray,

has been used by thousands of satisfied people throughout the United States. Promescent is

clinically proven to reduce sensitivity, treat premature ejaculation, and help men MAKE LOVE

LONGER®."  Again, Absorption's claim that Promescent is "FDA-compliant" and is "clinically

proven to reduce sensitivity, treat premature ejaculation, and help men MAKE LOVE

LONGER®." is misleading and constitutes false advertising.

74.     Each of these statements, and many others on the packaging for the Promescent product and Absorption's website, exceed the permissible claims under FDA Monograph and are not supported by the clinical evidence required to support such claims.

**False Comparative Advertising for Promescent**

75.     Absorption also has run advertising that falsely compares its product, Promescent, to RB's K-Y Duration male genital desensitizer.

76.     Absorption falsely claims that its product, Promescent, is the "last longer spray" when compared to K-Y Duration.

77.     When discussing K-Y Duration, Absorption claims that "[c]onsumers look for products that are effective, easy-to-use and have minimal side effects."  Implied in these claims is the suggestion that K-Y Duration is not effective or easy to use, and causes side effects.

78.     On the webpage https://www.promescent.com/promescent-reviews, Absorption makes additional false and misleading comparative statements with respect to Promescent and other competing products such as RB's K-Y Duration product.  For example, Absorption states that:

> Unlike any other lidocaine delay sprays such as Stud 100® or K-Y Duration™, or Preboost® which uses benzocaine, Promescent has TargetZone™ technology. When applied correctly, Promescent adjusts sensitivity to your penis without transferring to your partner. It gives you control with next-to-normal sensitivity. So you get to last longer in bed and feel great doing it.

Absorption's claims of superior efficacy, adjustment of sensitivity, non-transference  and next-to-normal sensitivity are not permitted by the FDA Monograph and are not supported by any clinical evidence.

79.     On that same webpage, Absorption claims that Promescent is a eutectic formula, while K-Y Duration and other competitive products are not.  Absorption goes on to claim that:

Sprays who do not have a eutectic formulation have a higher chance of infiltrating in the underlying tissue and bloodstream. Therefore, the user looses sensitivity over a much greater area then that were the product is applied, often creating a numbing sensation. A eutectic formulation keeps the API at a very limited area, allowing the users to benefit from the delaying effect, without sacrificing sensitivity outside the application area.

Again, these claims by Absorption regarding Promescent's purported superior efficacy and the claimed unwanted side effects purportedly caused by K-Y Duration and other competitive products are not permitted by the FDA Monograph and are not supported by any clinical evidence.

80.    Absorption's false advertising is damaging RB's goodwill and business in ways that cannot readily be quantified or recaptured.  Among other things, the challenged advertising sows doubts in consumers' minds about the efficacy of RB's sexual wellness products.

## Injury to RB and the Public

81.    RB has been injured by Absorption's false advertising, which impugns the performance and safety of its sexual wellness products.  RB is likely to continue to suffer irreparable injury until Absorption's false advertising is stopped.

82.    Absorption's false advertising is damaging RB's goodwill and business in ways that cannot readily be quantified or recaptured.  Among other things, the challenged advertising sows doubts in consumers' minds about the efficacy of RB's sexual wellness products.

83.    In addition to harming RB's reputation and standing with the consuming public, Absorption's false advertising has diverted to Absorption sales that RB otherwise would have made and has prevented RB from earning profits on those sales that RB otherwise would have earned.

84.    If Absorption is permitted to continue its false and misleading ad campaign, RB is likely to (1) lose the loyalty of consumers who have purchased its K-Y Duration products in the

past; and (2) fail to attract consumers whom its K-Y Duration products would otherwise have attracted in the absence of Absorption's false advertising.  This damage, once done, will be difficult to quantify or remediate.

85.     In addition to causing irreparable injury to RB, Absorption's deceptive advertising campaign harms the public interest.  Consumers rely on information in advertisements to make educated purchasing decisions.  Absorption's packaging and advertising have the purpose and effect of deceiving consumers and inducing them to purchase Promescent based on misinformation.  Accordingly, the relief requested herein furthers the public interest in truthful advertising.

86.     RB has a strong commercial interest in preventing the further dissemination of Absorption's false advertising.

## FIRST COUNTERCLAIM
### (Fraud)

87.     RB repeats and incorporates herein by reference each and every one of the allegations contained in Paragraphs 1 through 86, inclusive, of the Counterclaims with the same force and effect as if set forth in full herein.

88.     Absorption made material misrepresentations of fact, material omissions of fact, and engaged in deceptive acts and practices, as set forth above.

89.     Said material misrepresentations included, without limitation:  claiming that GSK was prepared to make a formal proposal to Absorption with respect to the Promescent product in June 2014; claiming that Abraham was meeting with Church & Dwight with respect to the Promescent product in October 2014; repeatedly claiming throughout 2014 that Absorption was engaged in negotiations with respect to the Promescent product with other companies, including Auxilium, GSK, and Church & Dwight; and claiming that Absorption was in the process of

conducting clinical trials with respect to the Promescent product and that those clinical trials would be completed before the end of 2014.

90.     Absorption knew that its representations, omissions, suppressions and deceptive acts were false; Absorption engaged in this deceptive activity knowing its words and actions were false and misleading; and with the intent that RB rely upon them.

91.     RB reasonably relied upon Absorption's representations, omissions, suppressions and other deceptive acts to RB's great harm and detriment.

92.     Absorption's representations were false, and as a result of RB's reliance upon Absorption's representations, RB has suffered damages in an amount to be determined at trial.

93.     Absorption acted intentionally, with deliberate disregard of RB's rights, with the knowledge that Absorption's fraud would severely injure RB while it enriched Absorption. Absorption's acts were reprehensible and egregious, to the extent that they should shock the conscience of the Court.

94.     RB is entitled to its actual, compensatory, special, consequential and incidental damages in an amount sufficient to fully compensate RB for its damages, injuries and losses in an amount to be determined at trial, together with appropriate punitive damages in such amount as shall be sufficient to deter such conduct in the future.

## SECOND COUNTERCLAIM
### (Negligent Misrepresentation)

95.     RB repeats and incorporates herein by reference each and every one of the allegations contained in Paragraphs 1 through 94, inclusive, of the Counterclaims with the same force and effect as if set forth in full herein.

96.     Absorption made several false material representations or omissions of fact, as set forth above.

97.    Said false material representations included, without limitation:  claiming that GSK was prepared to make a formal proposal to Absorption with respect to the Promescent product in June 2014; claiming that Abraham was meeting with Church & Dwight with respect to the Promescent product in October 2014; repeatedly claiming throughout 2014 that Absorption was engaged in negotiations with respect to the Promescent product with other companies, including Auxilium, GSK, and Church & Dwight; and claiming that Absorption was in the process of conducting clinical trials with respect to the Promescent product and that those clinical trials would be completed before the end of 2014.

98.    Absorption failed to exercise reasonable care in making the false material representations and omissions to RB, and, in fact unreasonably provided RB with unreliable, false and misleading information, which RB relied upon to its detriment.

99.    As a result of RB's reliance upon Absorption's unreliable, false and misleading information, RB has suffered damages in an amount to be determined at trial.

**THIRD COUNTERCLAIM**
**(False Advertising – Lanham Act)**

100.    RB repeats and incorporates herein by reference each and every one of the allegations contained in Paragraphs 1 through 99, inclusive, of the Counterclaims with the same force and effect as if set forth in full herein.

101.    Absorption has engaged in unfair and fraudulent business acts and practices, including the dissemination of unfair, deceptive, untrue and misleading advertising about its own product and concerning the efficacy and suitability of RB products.

102.    By reason of the foregoing, Absorption has violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

103.     Absorption's conduct as aforesaid have caused and, unless said acts are restrained by this Court, will continue to cause RB irreparable injury.

104.     RB has no adequate remedy at law.

105.     Absorption's conduct challenged herein has been and is willful.

## FOURTH COUNTERCLAIM
### (New Jersey Common Law Unfair Competition)

106.     RB repeats and incorporates herein by reference each and every one of the allegations contained in Paragraphs 1 through 105, inclusive, of the Counterclaims with the same force and effect as if set forth in full herein.

107.     By reason of the foregoing, Absorption has engaged in unfair competition under the common law of the State of New Jersey.

108.     Absorption's conduct as aforesaid have caused and, unless said acts are restrained by this Court, will continue to cause RB irreparable injury.

109.     RB has no adequate remedy at law.

110.     Absorption's conduct challenged herein has been and is willful.

## FIFTH COUNTERCLAIM
### (New Jersey Statutory Unfair Competition, N.J.S.A. § 56:4-1, *et seq.*)

111.     RB repeats and incorporates herein by reference each and every one of the allegations contained in Paragraphs 1 through 110, inclusive, of the Counterclaims with the same force and effect as if set forth in full herein.

112.     Absorption, to induce the public to purchase its products, has disseminated untrue and misleading statements about its own products and concerning the efficacy, content and suitability of RB's products.

113.    Absorption knew or should have known by the exercise of reasonable care that its advertising and promotions were untrue and misleading.

114.    By reason of the foregoing, Absorption has engaged in unfair competition, including unlawful, unfair, deceptive and fraudulent business acts or practices, in violation of N.J.S.A. § 56:4-1, *et seq*.

115.    Absorption's conduct as aforesaid have caused and, unless said acts are restrained by this Court, will continue to cause RB irreparable injury.

116.    RB has no adequate remedy at law.

117.    Absorption's conduct challenged herein has been and is willful.

### SIXTH COUNTERCLAIM
### (Violation of New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2)

118.    RB repeats and incorporates herein by reference each and every one of the allegations contained in Paragraphs 1 through 117, inclusive, of the Counterclaims with the same force and effect as if set forth in full herein.

119.    Absorption, to induce the public to purchase its products, has used acts of deception, fraud, false pretense, false promise, and/or misrepresentation in connection with the advertising of its product.

120.    The false and/or misleading claims challenged herein regarding the efficacy, content and suitability of Absorption's product, are material to consumer decisions.

121.    By reason of the foregoing, Absorption has violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-2.

122.    Absorption's conduct as aforesaid has caused and, unless said acts are restrained by this Court, will continue to cause RB irreparable injury.

123.    RB has no adequate remedy at law.

124.     Absorption's conduct challenged herein has been and is willful.

## SEVENTH COUNTERCLAIM
### (Declaratory Judgment)

125.     RB repeats and incorporates herein by reference each and every one of the allegations contained in Paragraphs 1 through 125, inclusive, of the Counterclaims with the same force and effect as if set forth in full herein.

126.     This is an action for declaratory judgment pursuant to 28 U.S.C. § 2201.

127.     Absorption has claimed that RB misappropriated Absorption's "trade secrets" that were purportedly disclosed during RB's due diligence with respect to Absorption and the Promescent product.  Absorption has further claimed that RB used Absorption's purported "trade secrets" during RB's development of K-Y Duration.

128.     Absorption has used this claim to argue that RB is liable for misappropriation of trade secrets under the Defend Trade Secrets Act and Nevada law.

129.     RB has denied these allegations on several grounds, including the fact that Absorption did not take reasonable measures to keep its purported "trade secret" information secret, that such information was readily ascertainable through proper means, and that RB did not use or misappropriate the purportedly "trade secret" information.

130.     There is a bona fide, actual and present need for a declaration, as Absorption has specifically claimed, in this action and otherwise, that Absorption maintained its purportedly "trade secret" information as a trade secret and that RB misappropriated that information.

131.     To clarify its rights under the law and avoid any uncertainty surrounding Absorption's purportedly "trade secret" information, RB seeks a declaratory judgment that Absorption did not take reasonable measures to keep its purported "trade secret" information

secret, that such information was readily ascertainable through proper means, and that RB did not use or misappropriate the purportedly "trade secret" information.

## PRAYER FOR RELIEF

**WHEREFORE**, RB respectfully prays that this Court:

A.    Dismiss the Complaint in its entirety, with prejudice;

B.    Enter an injunction that permanently bars Absorption from:

(i)    Disseminating the advertisements referenced herein, and any other substantially identical advertisements;

(ii)    Disseminating any advertisement or promotional communication that includes any false or misleading comparison between an Absorption product and an RB product, including without limitation any comparison that represents or implies that the products depicted in the advertisement do not have similar efficacy or uses when in fact they do; and/or

(iii)    Claiming, whether directly or by implication, in any advertisement or promotional communication, that:

(a).    Absorption's male genital desensitizer product is generally superior to RB's male genital desensitizer product;

(b).    RB's male genital desensitizer product is generally inferior to Absorption's male genital desensitizer product;

(c).    Absorption's male genital desensitizer product is absorbed faster through the skin than RB's K-Y Duration product; or

(d).    Includes the Clinically Proven Claim.

C.      Enter an Order directing Absorption to disseminate, in a form to be approved by the Court, advertising designed to correct the erroneous impressions created by the false and misleading claims made by Absorption in its advertising;

D.      Enter an Order pursuant to 15 U.S.C. § 1116(a) directing Absorption to file with the Court and serve upon RB, within 30 days after entry of judgment, a report, in writing and under oath, setting forth in detail the manner and form in which Absorption has complied with the judgment;

E.      Grant that RB be awarded its actual, compensatory, special, consequential and incidental damages in an amount sufficient to fully compensate RB for its damages, injuries and losses in an amount to be determined at trial, together with appropriate punitive damages;

F.      Declare that this is an "exceptional case" due to the willful nature of Absorption's false advertising, and awarding treble damages, attorneys' fees and costs to RB pursuant to 15 U.S.C. § 1117;

G.      Grant that, in addition to any other appropriate legal or equitable relief, RB be awarded threefold the damages sustained by RB pursuant to N.J.S.A. § 56:8-19.

H.      Grant that RB be awarded its reasonable attorneys' fees, costs, expenses and disbursements in an amount to be determined at trial;

H.      Enter a declaratory judgment in favor of RB and against Absorption providing that Absorption did not take reasonable measures to keep its purported "trade secret" information secret, that such information was readily ascertainable through proper means, and that RB did not use or misappropriate the purportedly "trade secret" information; and

I.       Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

RB demands trial by jury on all claims for relief herein so triable.

Dated: April 16, 2019
      New York, New York

/s/ Tyler E. Baker
Paul W. Garrity (*admitted pro hac vice*)
Thomas M. Monahan (*admitted pro hac vice*)
Jean N. Ripley (*admitted pro hac vice*)
Tyler E. Baker
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  212.653.8700
Facsimile:  212.653.8701
PGarrity@sheppardmullin.com
TMonahan@sheppardmullin.com
JRipley@sheppardmullin.com
TBaker@sheppardmullin.com

Thomas R. Curtin
Joseph P. LaSala
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
Telephone:  973.993.8100
Facsimile:  973.425.0161
TCurtin@mdmc-law.com
JLaSala@mdmc-law.com

*Attorneys for Defendant Reckitt Benckiser, LLC*

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

The undersigned hereby certifies, in accordance with Local Rule 11.2, that none of the claims in the above captioned action are the subject of any other action pending in any court, arbitration or administrative proceeding.

I certify that the foregoing statements made by me are true to the best of my knowledge and I understand that if the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: April 16, 2019
       New York, New York

/s/ Paul W. Garrity
Paul W. Garrity (*admitted pro hac vice*)
Thomas M. Monahan (*admitted pro hac vice*)
Jean N. Ripley (*admitted pro hac vice*)
Tyler E. Baker
SHEPPARD MULLIN RICHTER & HAMPTON LLP
30 Rockefeller Plaza
New York, New York 10112
Telephone:  212.653.8700
Facsimile:  212.653.8701
PGarrity@sheppardmullin.com
TMonahan@sheppardmullin.com
JRipley@sheppardmullin.com
TBaker@sheppardmullin.com

Thomas R. Curtin
Joseph P. LaSala
MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, New Jersey 07962-2075
Telephone:  973.993.8100
Facsimile:  973.425.0161
TCurtin@mdmc-law.com
JLaSala@mdmc-law.com

*Attorneys for Defendant Reckitt Benckiser, LLC*