

**WALSH
PIZZI
O'REILLY
FALANGA**

**THREE GATEWAY CENTER**
100 Mulberry Street, 15th Floor
Newark, NJ 07102
T: 973.757.1100
F: 973.757.1090
**WALSH.LAW**

Liza M. Walsh
Direct Dial: (973) 757-1101
lwalsh@walsh.law

March 28, 2022

**VIA ECF**
Honorable Jessica S. Allen, U.S.M.J.
US District Court for the District of NJ
Martin Luther King Jr. Bldg. & U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

      Re:    *Absorption Pharmaceuticals, LLC v. Reckitt Benckiser LLC,*
             Civil Action No. 2:17-cv-12872 (D.N.J)

Dear Judge Allen:

      This firm, together with Proskauer Rose LLP, represents Plaintiff Absorption Pharmaceuticals LLC ("Absorption") in the above-referenced matter. We respectfully submit this response in opposition to Defendant Reckitt Benckiser LLC ("RB")'s latest request to amend its trial exhibit list. (D.I. 385.)

## Background and Procedural History

      The parties submitted their Joint Proposed Final Pretrial Order, including a joint exhibit list with 128 exhibits, as well as the parties' individual exhibits lists, on August 27, 2020. (D.I. 291.) On March 30, 2021, Judge Falk entered the Final Pretrial Order, which attached RB's exhibit list as Exhibit E. (D.I. 305.) RB's original list included 693 exhibits. Nine months later, at the December 14, 2021 Status Conference, RB sought permission to add an unidentified number of exhibits to its exhibit list. After an extended colloquy, Your Honor granted RB's request to submit a revised Exhibit E to the Final Pretrial Order with a "handful" of new exhibits (*i.e.*, "five or six"). (*See* D.I. 370 at 48:15- 52:11.) In the end, RB identified 14 new exhibits. Nonetheless, Absorption informed the Court that "Absorption does not object to the addition of these 14 documents to RB's Proposed Exhibit list *without further modification*." (D.I. 366 (emphasis added).) The parties then submitted Amended Exhibit E, (D.I. 366-1), and the Court entered the Amended Final Pretrial Order on December 17, 2021. (D.I. 368.)

      Nearly three months later, RB wrote to Absorption on March 11, 2022, purporting to unilaterally modify its trial exhibit list attached as Exhibit E to the Amended Final Pretrial Order by adding over 50 new trial exhibits. Absorption responded that RB must seek leave of the Court if it wanted to change the Amended Final Pretrial Order. When the parties met and conferred, RB identified two general categories of documents: (i) 11 deposition exhibits that were inadvertently omitted from RB's deposition designations; and (ii) 40 additional documents that RB's counsel says it identified during trial preparation after RB dropped its counterclaims.

March 28, 2022
Page 2

      After the parties met and conferred, Absorption informed RB that it would not oppose the addition of deposition exhibits that were referenced in RB's designations but inadvertently omitted from RB's exhibit list. RB should not be punished for a clerical error.[1]

      However, Absorption also raised several objections to the new exhibits identified by RB. First, Absorption objected to the inclusion of a podcast that was neither marked a deposition exhibit, nor produced during the discovery period. Second, Absorption objected to the addition of the 40 new documents that RB's counsel identified after the December status conference before Your Honor. RB's application followed.

### RB's Request To Further Modify Its Trial Exhibit List Should Be Denied

      "The court may modify the order issued after a final pretrial conference ***only to prevent manifest injustice***." FED. R. CIV. P. 16(e) (emphasis added). There is no risk of manifest injustice here. Between RB's Amended Trial Exhibit List and the parties' Joint Trial Exhibit List, RB already has over 800 trial exhibits at its disposal. RB had an entire year since the entry of the original Final Pretrial Order to "discover" the 40+ documents that it now seeks to add to its extensive collection of exhibits, only a small fraction of which could ever possibly be entered into evidence at trial. Also, RB previously sought and obtained leave from the Court to add "five or six" new exhibits. When RB stretched the Court's allowance and added 14 new exhibits, Absorption did not protest or complain. But to make a similar application now to add dozens more exhibits—after Judge Arleo has ruled on the parties' motions *in limine*—is highly prejudicial to Absorption, disruptive to the orderly progression of this case to trial, and unfair to both Absorption and the Court.

      RB's argument tracks a standard introduced by the Third Circuit in *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894 (3d Cir. 1977), a case decided before the amendment to Rule 16(e) to include the "manifest injustice" standard for amendments to the final pretrial order. *See Scopia Mortgage, Corp. v. Greentree Mortgage Co.*, 184 F.R.D. 526, 528 (D.N.J. 1998). Nonetheless, even under a less demanding standard, RB cannot satisfy three factors because adding scores of new exhibits at this late stage would (1) result in significant prejudice to Absorption (2) that cannot be cured by Absorption (3) without disrupting the orderly and efficient trial of the case now that the deadline for motions *in limine* has passed.

      "If anything, the standard required by Rule 16(e) is more stringent than the old *Meyers* standard." *Id.* at 529. More recent cases focus on additional factors, including "whether the decision to amend . . . is a matter of a new strategy or tactic." *Id.* Here, RB has conceded as much, admitting that this application arises out of "its efforts to reassess the importance of certain exhibits in light of the narrowing of the issues in the case." (D.I. 385 at 4.)

      RB has not come close to showing of manifest injustice. Absorption respectfully submits that RB's application should be denied.

---

[1] Notably, RB tries to exploit Absorption's cooperation on the inadvertently omitted deposition exhibits to support the rest of its application: "Plaintiff has already informed Reckitt of its intent to object to certain of the ten documents it consents to Reckitt adding, and has not explained why objecting to 41 other documents is significantly more burdensome." (D.I. 385 at 3-4.)

a. <u>eHealthRadio Podcast</u>

The podcast identified by RB as "proposed Exhibit DX-860" is deeply problematic. RB concedes the proffered audio content was not marked as a deposition exhibit or produced during discovery. The URL provided by RB as the source of the audio content during Mr. Abraham's deposition no longer exists.[2] As a result, Absorption has not been able to examine the audio or determine whether it has been edited or manipulated in any way. Absorption raised a timely objection during Mr. Abraham's deposition on the ground that the podcast had not been produced in the litigation. RB has done nothing to address the objection for over three years.

> MR. WEISS: Have you guys produced that [podcast] in any form in the litigation?
> [RB'S COUNSEL]: No. It's on the Internet.
> MR. WEISS: I'm just going to raise an objection to that.
> [RB'S COUNSEL]: Okay.

(12-21-2018 Abraham Dep. Tr. at 203:7-12.)

Had the audio content been included on RB's exhibit list in the ordinary course, it would have been the subject of a motion *in limine* on at least the following grounds:

- *Failure to disclose information under FED. R. CIV. P. 37.* RB failed to produce the podcast during discovery and, therefore, should not be allowed to use that information as evidence at trial.

- *Lack of authenticity under FED. R. EVID. 901.* Mr. Abraham did not recall giving the interview or the podcast during his deposition. In fact, he testified: "I have no idea what that podcast is." Nor has RB offered a declaration or affidavit from the content creator verifying that the audio is what RB claims it to be.

- *Lack of relevance under FED. R. EVID. 402.* RB highlights the following quote from the podcast: "[I]f you look at our repeat business, it's insane . . . when someone finds this product, they try it. If they try it, they like it. If they like it, they come back and they re-order over and over again." (D.I. 385 at 2.) Presumably, RB intends to argue that this informal characterization of "consumer ordering patterns" reflects alleged trade secret information that Absorption did not take reasonable measures to keep secret. But Absorption has never alleged that Mr. Abraham's subjective belief that his repeat business is "insane" is an actual trade secret. Nor is it an alleged trade secret that customers who like Absorption's product "re-order over and over again." Rather, RB received and misappropriated years of aggregate sales data that showed, among other things, the repurchase rate of Absorption's customers (as a specific percentage), conversion rates, the sales split between sizes, and the level of consumer demand at premium prices. None of that information was disclosed in a podcast or anywhere else.

---

[2] RB's counsel introduced the podcast as follows: "Now, just for the record, I'm going to play briefly a portion of a podcast. It's the eHealth Radio network podcast from January 20, 2016. It's available at eHealthRadio.podbeam.com/E/make-love-longer-CEO-of-Promescent-launches-first-FDA-compliant-treatment-for-PE, and I'm going to just start playing that at 10 minutes and 51 seconds into the podcast." (12-21-2018 Abraham Dep. Tr. at 202:24-203:6.)

March 28, 2022
Page 4

- *Prejudice, confusion, and waste of time under FED. R. EVID. 403.* RB's intended use of the podcast would mislead the jury and confuse the issues with respect to the specific trade secrets at issue in this case. It is a classic strawman argument that would waste time while Absorption is forced to correct the record. To the extent the podcast has any probative value at all, it would be substantially outweighed by the risk of unfair prejudice to Absorption, confusing the issues, and misleading the jury.

Discovery in this matter closed long ago. The deadline for motions *in limine* also passed, and Judge Arleo has already issued rulings on all pretrial motions. RB says it will not object to additional motions *in limine* from Absorption. (D.I. 385 at 4.) But Absorption should not have to divert time and resources away from trial preparation to file and argue additional evidentiary motions because, in the run up to trial, RB decided to change its strategy to focus on Internet content that is not in the record. It would also be unfair to Judge Arleo to drop additional motions on the Court at this late stage. RB's application should be denied with respect to the podcast identified as Exhibit DX-860.

### b. 40 "New" Documents

The only explanation offered by RB for its untimely application is not persuasive: "Reckitt's amendment arises out of its efforts to reassess the importance of certain exhibits in light of the narrowing of the issues in the case." (D.I. 385 at 4.) Simply put, there is no legitimate reason why narrowing the case should lead to more exhibits, let alone 40 of them.[3]

RB does not attempt to make a particularized showing as to the importance of the 40 specific documents at issue. Instead, RB asserts generally that the documents "relate to issues of obvious relevance to the case," and that "given the importance of these documents, it would be Reckitt which would be prejudiced by exclusion of this evidence." (D.I. 385 at 2, 4.) RB offers no details regarding how or why it would be prejudiced when RB has over 800 other joint and defense exhibits at its disposal.

RB also asserts "[t]here can be no conceivable prejudice to Plaintiff from the amendment." (*Id.* at 3.) However, RB fails to acknowledge that Absorption has been relying on exhibit lists that have been in place for a year. RB's amendment would prejudice Absorption by diverting substantial resources away from trial preparation to consider rebuttal exhibits and revise existing witness outlines. None of this is warranted by RB's last-minute change in strategy.

In sum, RB has not come anywhere close to establishing that manifest injustice would result if the Court rejected the late addition of 40 "new" documents identified by RB during its recent effort to "reassess the importance of certain exhibits."

\*    \*    \*

---

[3] RB argues that it has removed exhibits, resulting in a net reduction of the number of exhibits on its list. (D.I. 385 at 4.) But RB's reduction does little, if anything, to narrow this case for trial and instead appears to be an effort to improve the optics for RB's request to add 51 exhibits at this late stage. In fact, during the December 8, 2021 pretrial conference, RB told Judge Arleo that, while it recognized its exhibit list was "significantly longer" than Absorption's list, RB was "going to come down to, you know, 200 to 300 exhibits." That has not happened.

March 28, 2022
Page 5

      In light of the foregoing, Absorption respectfully submits that RB's request for leave to amend its trial exhibit list should be denied. Absorption thanks the Court for its consideration of this submission and ongoing attention to the matter and is available should Your Honor need anything further.

      Respectfully submitted,

      */s/ Liza M. Walsh*

      Liza M. Walsh

cc: Counsel of Record (via ECF and E-mail)