# McElroy Deutsch

1300 Mount Kemble Avenue
P.O. Box 2075
Morristown, NJ 07962-2075
**T:** 973.993.8100 | **F:** 973.425.0161
**MDMC-LAW.COM**

Thomas R. Curtin
Direct Dial: (973) 401-7117
tcurtin@mdmc-law.com

May 19, 2022

**VIA ECF**

Honorable Madeline Cox Arleo, U.S.D.J.
Martin Luther King, Jr. Federal Building
 and U.S. Courthouse
50 Walnut Street
Newark, New Jersey 07102

**PUBLIC VERSION
REDACTED**

Re: *Absorption Pharm., LLC v. Reckitt Benckiser, LLC, et al.*,
    Civil Action No. 17-12872 (MCA) (JSA)

Dear Judge Arleo:

    Reckitt seeks to call Dr. Tülin Erdem, a professor at New York University, as an expert on marketing, consumer behavior and decision-making, and marketing research. Dr. Erdem's report was timely submitted to Absorption on May 17, 2019, and contains her opinions on whether practices that Absorption claims are trade secrets were known by Reckitt or others throughout the sexual wellness industry, and whether such practices had economic value. Dr. Erdem also offers her opinion on the factors that contribute to the commercial success of PE sprays, including K-Y Duration. These topics and the others addressed in Dr. Erdem's report relate to the central disputes in this case—namely, whether Absorption's alleged trade secrets were protectable under federal or state law, and whether Reckitt misappropriated that information to develop K-Y Duration. Although Dr. Erdem's report frames various of her opinions as responding to one of Absorption's experts (Dr. Gary Frazier), the substance of her work and opinions stands alone. *See, e.g.*, Report of Tülin Erdem at ¶¶ 22, 24, B-1 - B-9 (Ex. A) (noting that her report ███████████ ████████████████████████████████████████████ based on her review of the record, and examination of the literature). As such, Absorption's decision not to call Dr. Frazier has no effect whatsoever on the relevance and probative value of Dr. Erdem's testimony. Accordingly, Absorption's objection to Reckitt's calling Dr. Erdem as a witness is meritless.

    Absorption's cynical effort to manipulate the evidence Reckitt can present to defend itself by dropping its expert mid-trial and attempting to use that tactical decision to preclude relevant and admissible opinion testimony on issues that go to the heart of this case should not be countenanced. Playing "gotcha" is inappropriate in any circumstances, but especially so in a case where the plaintiff is asking for a half-a-billion dollars.

**McElroy Deutsch**

Honorable Madeline Cox Arleo, U.S.D.J.
May 19, 2022
Page 2

I. **DR. ERDEM'S TESTIMONY IS RELEVANT**

The Defend Trade Secrets Act (DTSA) and New Jersey Trade Secrets Act (NJTSA) both "require[] a plaintiff to demonstrate … the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 & n.11 (3d Cir. 2021). To assess information's "protected status as a trade secret, courts consider whether the owner of the information has taken reasonable measures to keep it secret and whether the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* at 905 (alterations omitted) (quoting 18 U.S.C. § 1839(3)). To establish misappropriation through "use" of a trade secret, Absorption must demonstrate that Reckitt "t[ook] advantage of trade secret information to obtain an economic benefit, competitive advantage, or other commercial value, or to accomplish a similar exploitative purpose." *Id.* at 910.

Dr. Erdem's testimony is directly relevant to these questions. Although Absorption's articulation of what exactly constitute its trade "secrets" has continually shifted throughout this litigation, it appears to maintain that a number of common marketing practices and readily ascertained features of its product deserve trade secret protection. Dr. Erdem will offer her opinion as to whether those practices and features are known by Reckitt and other companies in the sexual wellness market, which directly undermines Absorption's claims. Attached as Exhibit A is a copy of Dr. Erdem's report in which we have highlighted each paragraph containing her independent opinions. While several of these paragraphs reference Dr. Frazier's report as a topic sentence, the substance of the highlighted portions of Dr. Erdem's report unequivocally demonstrate the stand-alone nature of her opinions. For example, she will offer her opinion that ████████████ ████████████████████████████████████████████████████████ especially in goods, like PE sprays, that cannot be readily evaluated prior to experiencing them. *See* Ex. A at ¶¶ 26-27. She will explain that Reckitt and other industry members were well-acquainted with this pricing strategy at the time of the alleged misappropriation, and indeed were actively using premium pricing to market other sexual wellness products. *Id.* Dr. Erdem will also offer her opinion that the strategy of using small and large bottle sizes to drive adoption was well-known in the literature and industry, as were online sales and particular marketing devices (like euphemisms) that Absorption has at various times claimed are trade secrets. *Id.* ¶¶ 28-31.

Dr. Erdem's testimony will further address whether Reckitt obtained economic benefit, competitive advantage, or other commercial value from the alleged trade secrets. It is her opinion, for example, that the cost of goods sold (COGS) of a PE spray was determinable by multiple methods available to industry members, including Reckitt. Ex. A at ¶ 33. She will also testify that customer behavior data, including regarding PE products, was accessible to RB through its own internal resources or ordinary business channels. *Id.* ¶¶ 34, 53-58. Finally, Dr. Erdem's testimony will address the marketing literature on what is necessary for the successful entry into a market, the role that brand-strength plays in such efforts, and how Reckitt's existing experience in the PE

# McElroy Deutsch

Honorable Madeline Cox Arleo, U.S.D.J.
May 19, 2022
Page 3

market, its distribution channels, and its marketing prowess facilitated the launch of K-Y Duration. *Id.* ¶¶ 37-40, 47, 51.

## II.    ABSORPTION'S OBJECTIONS TO DR. ERDEM'S TESTIMONY LACK MERIT

Absorption offers no substantive objection to Dr. Erdem's testimony. Most notably, it has not asserted that it would be prejudiced in any way if Reckitt calls her as a witness. Nor could it. Dr. Erdem's report was timely disclosed three years ago, and she was deposed shortly thereafter. Reckitt does not seek to introduce any new opinions or rely on any materials not already analyzed within Dr. Erdem's report. Dr. Erdem's testimony will concern only those topics she discussed in her report, and directly addresses arguments and evidence that Absorption has put into controversy.

Absorption's only response to Reckitt's request that it be permitted to offer this relevant and highly probative evidence is to note that Dr. Erdem was labeled as a rebuttal witness and responded in her report to Dr. Frazier's opinions. That is elevating form over substance. Dr. Erdem's testimony certainly addresses claims made by Dr. Frazier. But plaintiff has not dropped the claims Dr. Frazier made regarding the value, confidentiality, and misappropriation of its information. It is simply attempting to support those same claims through other evidence. Dr. Erdem's testimony—that the information was not a valuable secret, but common and/or readily ascertainable knowledge, and did not provide Reckitt with a commercial advantage—therefore remains relevant. The fact that plaintiff has apparently concluded that its own expert's testimony on these subjects is not sufficiently reliable to be worth presenting to the jury is no reason to deprive defendant of expert testimony on the central issues in the case.

For these reasons, the Court should permit Reckitt to call Dr. Erdem as an expert witness.

Respectfully yours,

MCELROY, DEUTSCH, MULVANEY & CARPENTER, LLP

*/s/ Thomas R. Curtin*

THOMAS R. CURTIN

cc:    All counsel (via ECF and e-mail)